FLORA A. CARPENTER *vs.* WILLIAM M. CARPENTER.

MAY 13, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is a petition for divorce which, as amended, charged the respondent with extreme cruelty, neglect to provide, and gross misbehavior and wickedness repugnant to and in violation of the marriage covenant. The superior court granted the petition on the last-named ground and the respondent duly prosecuted his bill of exceptions to this court, relying only on his exception to the above decision.

The petitioner's case was submitted on her own testimony and that of two witnesses who corroborated her in certain material particulars. The respondent, whose defense was in the nature of a general denial of the charges contained in the petition, presented merely his own testimony. The basis of the charge of gross misbehavior was his alleged improper association with women other than his wife.

It is unnecessary to set out all the evidence in detail. By way of background it appears that the parties, who were married in 1912, had not gotten along well for the past ten or twelve years and that conditions at their home were not pleasant. The respondent was a toolmaker and when working received substantial pay. He had an automobile and

also a small shop of his own where he did odd jobs and experimental work. Apparently there were frequent arguments about money ·matters, the petitioner complaining that she had to use her own money to maintain the home, and the respondent contending that he gave her sufficient funds and that if she needed more she could go to work. The petitioner also stated that the respondent had shown her no affection for a considerable time and in particular when she had a serious operation about a year and a half before the petition was filed; that he contributed only a small amount toward her medical expenses; and that after the operation, while the petitioner was still confined to her bed, he neglected and ignored her and did not stay at home and help her in any way when he might have, with the result that her recovery was adversely affected. The respondent slept at his home but admitted that for the last two years at least he had not taken his meals there because the petitioner had said in substance that she wished he would die and that he would be of more benefit to her dead than alive.

In respect to the charge of gross misbehavior there was testimony on behalf of the petitioner to the following effect. Several years ago the respondent, after being questioned, admitted to the petitioner improper conduct with a woman neighbor. This woman came to the petitioner's home and asked her not to tell the former's family. The respondent denied making any such admission or taking part in such wrongdoing but said that he learned the woman went to his house for another reason.

Also for about three years prior to the hearing in the superior court the respondent had frequently been in the company of a married woman who was employed in the same building. Previously they had worked in the same shop and were both discharged therefrom. The testimony tended to show that she had filed a petition for divorce from her husband a short time before the instant petition was heard. The respondent admitted in substance that

for about two years he had spent a few evenings each week at her home, often remaining until a late hour, and that every Saturday night he had taken her in his automobile to different markets for the purpose of buying food, returning thereafter to her house. His purpose in thus assisting her was, according to his testimony, because her husband was allegedly a drunkard. The respondent denied any improper conduct with her. The petitioner put in evidence as exhibits two penciled notes to the respondent from this woman. While they did not expressly refer to any wrongdoing they were of a more or less intimate nature.

Furthermore, evidence submitted on behalf of the petitioner contained references to other pertinent incidents. One witness testified that on several occasions the respondent said he had to have other women, and another stated that she had frequently seen his car parked outside the house of the married woman with whom he admittedly associated as above referred to. Both of these witnesses also testified that the respondent bragged about his conquests with women. The respondent, however, denied any statements of the kind above mentioned. There was also testimony by the petitioner to the effect that in the summer of 1946 she and the respondent had occasion to be away from Providence; that he returned before she did; and that when she came back she found him in the kitchen of their home with another woman. He introduced the petitioner to this woman without giving the latter's name and she said: "You better tell her who I am, she thinks I'm the other woman."

In rendering his decision the trial justice stated in substance, among other things, that the petitioner and her witnesses impressed him favorably; that, considering all the testimony and the notes in evidence, he did not believe the relationship between the married woman and the respondent was "just a platonic friendship," but that the latter "has been carrying on." The trial justice then found that the petitioner had fully sustained the burden

of proving that the respondent had been guilty of gross misbehavior and wickedness in violation of the marriage covenant.

The respondent relies strongly on *Stevens* v. *Stevens,* 8 R. I. 557, in which case this court refused to grant a petition for divorce on the ground of gross misbehavior and wickedness. The court in that case, at page 562 of its opinion, set out in the following language the meaning and scope of the above ground: "In order to make the conduct of the respondent a ground of divorce, without regard to the time of its continuance, it should have some character of licentiousness or brutality, allying it in its moral attributes with adultery, or extreme cruelty, or, if different in kind, it should be similar, at least, in degree of criminality."

That case, however, in our judgment is clearly distinguishable from the instant case. There the court found no evidence of brutality on the part of the respondent and there was also in the record an admission by the petitioner, through her attorney, that there was nothing criminal in the conduct of the respondent with the woman involved. In the instant case, however, the trial justice, who saw and heard the witnesses testify, plainly drew the inference that the respondent's conduct with the married woman in question had some character of licentiousness allying it with the offense of adultery. We have considered all the evidence and are of the opinion that in the circumstances disclosed we cannot say that the above inference drawn by the trial justice was an unreasonable one, or that his decision for the petitioner was clearly wrong, or that it failed to do justice between the parties. For cases similar to the one now before us, see *Rainey* v. *Rainey,* 57 R. I. 426, and *Walker* v. *Walker,* 38 R. I. 362.

The respondent's exception is overruled, and the case is remitted to the superior court for further proceedings.

*Fred Brosco,* for petitioner.

*Wilford S. Budlong,* for respondent.